**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CITY OF CAYCE,
Plaintiff-Appellee,

v.

AT&T COMMUNICATIONS OF THE
SOUTHERN STATES, INCORPORATED,
Defendant-Appellant.

No. 95-1682

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CA-94-346-3-17)

Argued: November 1, 1995

Decided: June 30, 1997

Before MURNAGHAN and MOTZ, Circuit Judges, and
YOUNG, Senior United States District Judge for the
District of Maryland, sitting by designation.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Joseph Robert Guerra, SIDLEY & AUSTIN, Washing-
ton, D.C., for Appellant. Danny Calvert Crowe, TURNER, PADGET,
GRAHAM & LANEY, P.A., Columbia, South Carolina, for Appellee.
**ON BRIEF:** Bradford A. Berenson, SIDLEY & AUSTIN, Washing-
ton, D.C.; H. Simmons Tate, Jr., Francis P. Mood, SINKLER &

BOYD, P.A., Columbia, South Carolina, for Appellant. Roy D. Bates, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is an action in trespass for damages and for injunctive relief brought by the City of Cayce, a South Carolina municipal corporation, against AT&T Communications of the Southern States, Inc. (AT&T), a long distance telephone company incorporated in Georgia. It arises out of Cayce's attempt to impose an annual franchise fee on AT&T for the privilege of using interstate fiber-optic cables in rights-of-way underneath the City's streets, and AT&T's refusal to pay such a fee.

AT&T is a telecommunications common carrier, which provides long distance services under authorization from the Federal Communications Commission and the South Carolina Public Service Commission. AT&T owns long distance switches and lines that run between major metropolitan areas but it does not own or operate local telephone switches or lines; the latter are owned by local telephone companies, like Southern Bell.

In 1987, as part of its program to upgrade its national long distance network, AT&T began installing major telecommunications fiber-optic cable lines within South Carolina. These lines were installed along four routes: (1) Charlotte to Spartanburg, (2) Spartanburg to Asheville, (3) Wilmington to Columbia, and (4) Columbia to Augusta. In connection with these routes, fiber-optic cable lines were installed beneath the public streets in public rights-of-way in the South Carolina municipalities of Spartanburg, Greenville, Travelers Rest, Cowpens, Florence, Sumter, Columbia, Cayce, and South Congaree.

2

Four of these nine municipalities--Columbia, Spartanburg, Sumter, and Greenville--required AT&T to execute franchise agreements with them prior to the cable installation. The franchise agreements, which were executed in 1987 and 1988, provided for a one-time administrative fee to each city of $3 per linear foot of cable under public streets within the city and an annual franchise fee of $2 per linear foot. AT&T did not raise any objection to the legality or constitutionality of the annual franchise fee requirement with those four municipalities.

In November 1987, AT&T's installation contractor applied for a business license with Cayce for installation of fiber-optic cables within that city. There was no discussion or request by Cayce that AT&T enter into a franchise agreement or pay an administrative fee or annual franchise fee to Cayce. The City had no permit requirements for work done within its public rights-of-way except for those issued by the State Highway Department. AT&T obtained the required state and county approvals and installed its cables. Although the streets were maintained by the state and county, AT&T was solely responsible for the construction and installation of the 22,760 feet of fiber-optic cables and all attendant costs to Cayce. Similarly, AT&T is solely responsible for maintaining and servicing the cables. Prior to and at the time of AT&T cable installation, city officials were unaware that a fee could or should be obtained from AT&T.

In November or December 1991, city officials first learned that they "could franchise fiber-optic cables" and that AT&T had agreed to pay fees for such franchises to other South Carolina municipalities. In 1992, when city officials requested that AT&T pay a similar fee to Cayce, an AT&T employee allegedly indicated that if Cayce provided AT&T with a franchise ordinance, AT&T "would treat the City of Cayce on the same basis" that it had "treated the City of Columbia." By May 1993, the City had enacted a franchise ordinance and prepared a franchise agreement that was modeled on Columbia's ordinance and franchise agreement, except that in the Cayce agreement, the City expressly waived the one-time administrative fee of $3 per linear foot. AT&T refused to enter into the franchise agreement with, or pay an annual fee to, Cayce.

In December 1993, Cayce filed suit against AT&T in the Court of Common Pleas of Lexington County. AT&T removed the action to

3

federal court on the basis of diversity of citizenship. In its complaint, Cayce sought actual and punitive damages for trespass and an injunction prohibiting AT&T from continuing the use of public streets without complying with the franchise ordinance and paying the franchise fee. City officials testified in deposition that there is no correlation between the amount of the proposed annual franchise fee and services provided by the City to AT&T in connection with the fiber-optic cables.

At the conclusion of discovery, the district court granted Cayce's motion for summary judgment. The court reasoned that S.C. Code Ann. § 5-7-30 (Law. Co-op. Supp. 1995) provided Cayce with "the power and authority to enact" the franchise ordinance and exact a franchise fee from AT&T. The district court rejected all of AT&T's arguments, concluding that Cayce "had the authority under South Carolina law, to pass the franchise ordinance in issue, and that AT&T had no legal right to refuse to execute the Franchise Agreement." The court determined that punitive damages were "not appropriate" and that the amount of the City's actual damages for the trespass should be measured by the amount set forth in Cayce's proposed franchise agreement, $2 per linear foot of cable, or $45,520 per year, from May 3, 1993, the date of the enactment of the Cayce franchise ordinance. The court also issued a mandatory injunction, requiring AT&T to execute the franchise agreement with Cayce. AT&T appealed to this court; Cayce did not cross-appeal. The district court stayed its judgment pending appeal.

On appeal, AT&T maintained, as it did in the district court, that S.C. Code Ann. § 58-9-2020 (Law. Co-op. Supp. 1994) grants it the power to construct and maintain lines under any public road, without paying any franchise fee. The company asserted that S.C. Code Ann. § 5-7-30 only permits cities to impose franchise fees on a utility company's direct provision of services to city residents and does not permit a city to impose a fee on telephone lines that merely pass through the city without providing any local service or cost to the local municipality. AT&T also claimed that Cayce consented to the installation of the fiber-optic cables and cannot retroactively withdraw its consent. Finally, the company contended that Cayce's franchise fee violates the Commerce Clause of the United States Constitution.

4

In contrast, Cayce maintained that the district court correctly concluded that § 5-7-30, which provides cities with the right to "grant franchises for the use of public streets and makes charges for them" authorized it to impose the challenged franchise fee on AT&T. The City argued, again as the district court held, that the right given to telephone utilities to construct lines "under . .. any public roads" in § 58-9-2020 did not prohibit the imposition of this fee, particularly in view of the municipal consent provision in the South Carolina Constitution, Art. VIII, § 15. The City further argued that its employees could not, by inaction or otherwise, have consented to AT&T's use of its streets without a franchise because since only a city council (not city employees) has the power to grant franchises only the city council could have given this consent. Finally, Cayce asserted that the district court properly ruled that imposition of the franchise fee did not violate the Commerce Clause.

Faced with the parties' conflicting interpretations of South Carolina constitutional and statutory provisions, and no controlling South Carolina precedent on point, we certified the following questions of law to the Supreme Court of South Carolina:

> 1. Does the municipal consent power provided by the South Carolina Constitution, Art. VIII § 15, and the franchise authority provided by S.C. Code § 5-7-30 (1976) permit a South Carolina municipality to impose a fee on a telephone utility for the privilege of installing and maintaining, in public rights-of-way beneath city streets, interstate fiber-optic cables that provide no direct services to local residents?

> 2. Does S.C. Code § 58-9-2020 (1976) grant a telephone utility the right to construct and maintain such cables without payment of a fee to the municipality when the municipality provides no services to the company other than the physical space for the use of fiber-optic cables?

The Supreme Court of South Carolina, in its discretion, accepted the certified questions, and on June 2, 1997, issued an opinion answering the first question in the affirmative and the second in the negative. City of Cayce v. AT&T Communications of the Southern

5

States, Inc., No. 24626, 1997 WL 292133 (S.C. S.Ct. June 2, 1997). However, in answering the first question, the court explained, "Cayce has no ability to exercise its franchise authority under § 5-7-30 in these circumstances, and thus that statute cannot serve as the basis for the imposition of a fee." Id. at *2. Rather, the basis for the court's affirmative answer to question 1 is its holding that the municipal consent provision in the state constitution, Art. VIII,§ 15, permits a municipality to "require payment of a fee as a condition of permitting a telephone utility to construct and operate an interstate fiber optic cable using the city's streets" but the court noted "this constitutional provision speaks to the necessity of municipal consent at the time the telephone facilities are constructed." Id.

If the City of Cayce had contended that, pursuant to the municipal consent provision, it was requiring AT&T to pay the challenged fee as a condition for permitting the utility to operate its fiber-optic cable under city streets, the answer to the first question would provide substantial comfort to the City. However, Cayce did not make this argument. (Although the City relied on the municipal consent provision, it did so only defensively -- maintaining that the municipal consent provision did not permit AT&T's reading of § 58-9-2020.) Instead, Cayce has consistently maintained, as it does in its appellate brief, that it was "the plain language of S.C. Code Ann.§ 5-7-30" that authorized it to require AT&T to enter into the franchise agreement and pay the franchise fee. Thus, the City has never claimed that it sought to impose something other than a franchise fee and to act other than pursuant to its franchise authority under § 5-7-30.

Because the South Carolina Supreme Court has now expressly held that § 5-7-30 cannot "serve as a basis" for the challenged franchise fee and because § 5-7-30 is the exclusive basis that Cayce has asserted as authorizing the franchise fee, we must reverse the judgment of the district court.

REVERSED

6